Katherine M. NYONTEH,
Plaintiff–Appellant,

v.

PEOPLES SECURITY LIFE
INSURANCE COMPANY,
Defendant–Appellee.

Katherine M. NYONTEH,
Plaintiff–Appellee,

v.

PEOPLES SECURITY LIFE
INSURANCE COMPANY,
Defendant–Appellant.

Nos. 90–3151, 90–3156.

United States Court of Appeals,
Fourth Circuit.

Argued June 4, 1991.

Decided Feb. 7, 1992.

As Amended March 5, 1992.

J. Joseph Shepherd, argued (Parker E. Cherry, on brief), Purcell, Cherry, Kerns & Abady, Richmond, Va., for appellant.

William Tyler Shands, argued (Albert M. Orgain, IV and Robert B. Delano, Jr., on brief), Sands, Anderson, Marks & Miller, P.C., Richmond, Va., for appellee.

Before RUSSELL, PHILLIPS, and SPROUSE, Circuit Judges.

## OPINION

PER CURIAM:

Appellant Katherine M. Nyonteh appeals from the district court's judgment following a bench trial. She contends that the district court erred in finding an insurance policy's incontestability clause inapplicable as a result of the policy being void due to fraudulent statements made in the insurance application. Appellee Peoples Life Insurance Company (Peoples) cross-appeals, contending that, even if it cannot contest the validity of the policy under the terms of the policy itself, it can do so under the terms of a reinstatement application. We agree with both contentions and, accordingly, affirm.

### I.

Anthony J. Howell, Nyonteh's ex-husband, was hospitalized from February 8 to 11, 1986, at the Duke University Medical Center where he was diagnosed as suffering from chronic granulocytic leukemia. During that time he was told that, barring a successful bone marrow transplant, he had only a short time to live.

On June 14, 1986, Nyonteh and Howell applied to Peoples for insurance on Howell's life. In answering the health questions on the insurance application, both of them fraudulently concealed Howell's terminal leukemic condition. Nyonteh did not sign the application, although insurance agent Joseph P. Vaughan filled it out at her direction. As a result, the policy was issued in Howell's name. Ownership of the policy was subsequently transferred to Nyonteh on August 15, 1986. The policy was converted from a term to an endowment policy in July 1987.

Because Nyonteh was late in paying her insurance premiums, the policy lapsed in the summer of 1988. In October 1988, she applied for reinstatement. Vaughan filled out the application at her direction and received a check for payment due. Nyonteh did not sign the application for reinstatement, as this was not required under Peoples' procedures. Vaughan mailed the application to Howell with a note requesting him to read it for accuracy, sign it, and return it. Howell did so. In the application, both Nyonteh and Howell again concealed Howell's condition.

Following Howell's death, Nyonteh filed a claim for benefits under the policy. No benefits were paid, and she brought this action seeking recovery as the policy beneficiary. Following a bench trial upon stipulated records and documents, the district court held that Nyonteh had an insurable interest in Howell's life, but that the policy was void and unenforceable due to material misrepresentations in the application for insurance. Nyonteh and Peoples both appealed.

### II.

Nyonteh challenges several of the factual findings made by the district court. Specifically, she claims that she did not instruct Vaughan on how to fill out the reinstatement application. She also claims that she had no knowledge of Howell's illness and that no evidence introduced at trial proved she had such knowledge.

Findings of fact are not disturbed on appeal unless they were clearly erroneous. *Friend v. Leidinger,* 588 F.2d 61, 64 (4th Cir.1978). In his deposition, Vaughan indicated that he had filled out the reinstatement application by asking Nyonteh the questions on the form and filling in her answers. This is the sole evidence supporting the district court's conclusion that the reinstatement application was filled out at Nyonteh's direction. Nyonteh points to the lack of documentary evidence on this point and to her own denials in urging that the district court's conclusion was in error. It

is not this Court's role, however, to re-weigh the evidence. Vaughan's testimony is sufficient to support the district court's findings; accordingly, we conclude that they were not clearly erroneous.

Nyonteh's assertion that there was no direct evidence proving her knowledge of Howell's condition is correct. Evidence at trial showed, however, that: (1) Nyonteh had had little contact with Howell over the six years prior to the insurance application; (2) Nyonteh and Howell applied for the life insurance policy only four months after he had been diagnosed as suffering from leukemia; (3) Nyonteh falsely stated that she was Howell's sister in the answers she gave to Vaughan for the June 14, 1986, application; and (4) Nyonteh, not Howell, initiated the purchase of the policy and paid all premiums. Under these circumstances, the inference that Nyonteh knew of Howell's fatal condition was reasonable.

### III.

■ Nyonteh contends that the district court erred in finding the policy's incontestability clause inapplicable as a result of the policy being void due to misrepresentations in the insurance application. Because the district court's conclusion presents a question of law, we will review it de novo. *Pierce v. Underwood*, 487 U.S. 552, 558, 108 S.Ct. 2541, 2546, 101 L.Ed.2d 490 (1988).

The circumstances under which a misrepresentation in an application for insurance bars recovery are set forth in section 38.2–309 of the Code of Virginia, which provides that "[n]o statement in an application or in any affidavit made before or after loss under [an insurance] policy shall bar a recovery upon a policy of insurance unless it is clearly proved that such answer or statement was material to the risk when assumed and was untrue." Va.Code Ann. § 38.2–309 (Michie 1990); *Chitwood v. Prudential Ins. Co. of Am.*, 206 Va. 314, 143 S.E.2d 915, 917–18 (1965) (citing to predecessor code section 38.1–336). The concealment of a terminal illness leading to imminent death is material to the risk assumed by an insurance carrier; thus, the district

court's conclusion that Nyonteh and Howell had fraudulently misrepresented the state of Howell's health in both the insurance application and the application for reinstatement was clearly correct. The principle issue in this case, therefore, is not whether Peoples had grounds to challenge the insurance policy's validity, but whether it was barred from doing so by the policy's (or the reinstatement application's) incontestability clause.

In *Harrison v. Provident Relief Ass'n*, 141 Va. 659, 126 S.E. 696, 700 (1925), the Supreme Court of Virginia held that an insurer must contest a contract's validity for false or fraudulent statements within the period prescribed in the policy. *Accord Darden v. North Am. Benefit Ass'n*, 170 Va. 479, 197 S.E. 413, 415 (1938); *see also* Va.Code Ann. § 38.2–3107 (Michie 1990) (incontestability period limited to two years). Thus, an incontestability clause forecloses untimely challenges based on material misrepresentations in insurance applications. This result is consistent with holdings in other jurisdictions. *See* 1A John A. Appleman & Jean Appleman, *Insurance Law and Practice* § 332 (rev. vol. 1981); 18 George J. Couch et al., *Cyclopedia of Insurance Law* § 72:71 (2d ed. rev. vol. 1983); and cases cited therein.

The district court held, and Peoples contends, that the incontestability clause was inapplicable because the insurance policy was void. An incontestability clause normally presupposes a valid contract; a determination that the contract was void thus renders the clause inapplicable. 1A Appleman, *supra*, § 337; 18 Couch, *supra*, § 72:92. In *State Farm Mutual Automobile Insurance Co. v. Butler*, 203 Va. 575, 125 S.E.2d 823, 825 (1962), the Supreme Court of Virginia, applying the predecessor to section 38.2–309, held that "misrepresentations of facts material to the risk assumed in an application for insurance render the contract *void*." (emphasis added). Under *Butler*, thus, material misrepresentations appear to result in a void contract, a circumstance that normally would make the policy's incontestability clause inappli-

cable. This result conflicts directly with the holding in *Harrison.*

The reason for distinguishing between void and voidable contracts is that different legal consequences flow from that characterization. Restatement (Second) of Contracts § 7 & cmt. a (1979). The contestability of an insurance policy is a prime example. If the policy, and hence the incontestability clause contained therein, is void, then it should be contestable notwithstanding the incontestability clause. Under *Harrison,* the incontestability clause remains enforceable; thus, such policies are treated as voidable, not void. This result is consistent with Virginia law outside the insurance field. *See Pretlow v. Pretlow,* 177 Va. 524, 14 S.E.2d 381, 387 (1941) (fraud which induces contract formation renders a contract voidable); *West End Real–Estate Co. v. Claiborne,* 97 Va. 734, 34 S.E. 900, 906 (1900) (same); *compare* Restatement (Second) of Contracts § 164 (fraud resulting in voidable contract) *with id.* § 163 (fraud resulting in void contract). Moreover, a review of *Butler* and related Virginia precedent reveals that the void/voidable distinction was not material to those cases. Accordingly, we construe *Butler* consistent with the result reached in *Harrison* and hold that Nyonteh's policy was voidable.

We conclude that the incontestability clause was applicable to Peoples' defense of fraud. We turn next to its cross-appeal contention that a new incontestability period began to run upon reinstatement of the policy.

## IV.

The district court did not address whether the reinstatement application resulted in a new limitations period on contestability. Nevertheless, this Court may affirm on alternative grounds raised by the parties in the district court. *Dennison v. County of Frederick,* 921 F.2d 50, 53 (4th Cir.1990), *cert. denied,* — U.S. —, 111 S.Ct. 2828, 115 L.Ed.2d 998 (1991). The reinstatement application was in fact raised in the district court as a ground for barring Nyonteh's recovery; thus the issue may properly be addressed on appeal.

Section 38.2–3109 of the Code of Virginia provides:

A life insurance policy reinstated after July 1, 1986 ... shall be contestable on account of fraud or misrepresentation of any material fact pertaining to the reinstatement contained in a written application for reinstatement, or in any written statement supplemental to the application for reinstatement, only for the same period after reinstatement as the policy provides for contestability after original issue.

Va.Code Ann. § 38.2–3109 (Michie 1990). The incontestability period of the original policy was two years. The reinstatement application was filled out in October 1988, and this case was filed on February 1, 1990, well within the two-year limitations period. As discussed above, Nyonteh's reinstatement application included false statements that were material to the risks assumed by Peoples. It follows that the reinstatement of the insurance policy is invalid.

To avoid the consequences of these misrepresentations, Nyonteh employs a three-pronged attack, urging that: (1) no reinstatement contract was ever formed because Peoples' acceptance was invalid; (2) any contract formed is unenforceable against her because she failed to sign the application; and (3) the misrepresentations cannot be used to challenge the policy's validity because the reinstatement application was not "written" as required by section 38.2–3109 due to her failure to sign it. She further urges that, although the reinstatement contract is neither valid nor enforceable, the original policy is both because Peoples waived any right to void the policy for lapse when it accepted premiums from her following receipt of the reinstatement application. *See Home Beneficial Ass'n v. Field,* 162 Va. 63, 173 S.E. 370, 373 (1934).

Nyonteh's attack on the validity of Peoples' acceptance rests on Peoples' failure to sign, date, and indicate acceptance on the back of the reinstatement applica-

tion. This argument fails because neither the application nor the parol evidence introduced at trial indicated that this section of the application needed to be filled out in order for Peoples to accept. The section is marked "For Home Office Use Only"; the only reasonable interpretation is that the section related to Peoples' internal procedures and had no bearing on the existence of contractual relations between the parties.

▮▮▮ Nyonteh's challenge based on her not having signed the application fails because section 38.2–3109 does not introduce a general requirement that all reinstatement applications be in writing; rather, it limits charges of misrepresentation to those based on written statements. Her contention that the misrepresentations in the application cannot be used to challenge the reinstated policy also fails. Regardless of the effect of Nyonteh's statements, Howell's clearly meet the Code's requirements. Section 38.2–3109 limits challenges based on material misrepresentations to those based on written statements, but it does not limit written statements to those made by the applicant. Section 38.2–309 does focus on statements made by the applicant. The purpose of that section, however, is not to limit whose statements may be used to challenge a policy; rather, the section modifies the common law fraud standard applied in determining whether a statement bars recovery to a material misrepresentation standard. *See Chitwood v. Prudential Ins. Co. of Am.*, 206 Va. 314, 143 S.E.2d 915, 919 (1965).

The Supreme Court of Virginia held in *Burruss v. National Life Ass'n*, 96 Va. 543, 32 S.E. 49, 50 (1899), that fraudulent statements by the insured void an insurance policy, even if the owner/beneficiary of the policy is ignorant of the fraud. *Burruss* has been criticized for allowing a third party to affect the rights of an otherwise innocent contracting party. 12 Appleman, *supra*, § 7306.5, at 440 & n. 13. Nevertheless, the weight of legal authority recognizes that under at least some circumstances a third party's misrepresentation will make a contract voidable. For exam-

ple, section 164(2) of the second Restatement of Contracts provides that:

> If a party's manifestation of assent is induced by either a fraudulent or a material misrepresentation by one who is not a party to the transaction upon which the recipient is justified in relying, the contract is voidable by the recipient, unless the other party to the transaction in good faith and without reason to know of the misrepresentation either gives value or relies materially on the transaction.

*See also* 12 Samuel Williston & Walter H.E. Jaeger, *A Treatise on the Law of Contracts* § 1518, at 584 (3d ed. 1970); *cf. Gilley v. Union Life Ins. Co.*, 194 Va. 966, 76 S.E.2d 165, 170 (1953) (insurance applicant cannot be held liable for fraudulent answers inserted by the agent of the insurer where the applicant had no actual or constructive knowledge of the fraud). Nyonteh did not act in good faith; on the contrary, she participated in the fraud. Thus, under both *Burruss* and the narrower view of the second Restatement, Howell's misrepresentations are a ground to void the policy.

## V.

We conclude that the reinstatement application created a new period of incontestability that had not run at the time of Howell's death and of the filing of this suit. We further conclude that Howell's misrepresentations in the application rendered the policy voidable, and thus we agree with the result reached by the district court. We do not address Peoples' contention that the district court erred in finding that Nyonteh had an insurable interest in Howell's life.

For the foregoing reasons, the district court is affirmed.

AFFIRMED.