# Richmond

HAWKEYE-SECURITY INSURANCE COMPANY, ASSIGNEE OF WILLIAM HENRY DROUGHN v. GOVERNMENT EMPLOYEES INSURANCE COMPANY.

April 24, 1967.

Record No. 6393.

Present, All the Justices.

*Phillips M. Dowding* for the plaintiff in error.

*W. Stephen Moore* and *L. Eldon James* (*James, Richardson & James*, on brief), for the defendant in error.

SNEAD, J., delivered the opinion of the court.

On August 18, 1962, Einer Carl Mattson, Jr. was operating an automobile owned by and with consent of his father, Einer Carl Mattson, Sr. It became involved in a collision with another vehicle operated by William Henry Droughn who received personal injuries. Mattson, Sr. reported the accident to Government Employees In-

surance Company, appellee, which had issued to him a liability insurance policy on his car involved in the mishap. Under the terms of the policy, Mattson, Jr. was an additional insured. On November 20, 1962, after some investigation, Government Employees wrote Mattson, Sr. advising "[W]e hereby declare the captioned policy null and void and of no effect as of its inception date" because of a material misrepresentation made in his application for the insurance coverage, and it enclosed a check for a refund of premiums paid.

On September 22, 1964, Droughn recovered a judgment in the sum of $2,000 against Mattson, Jr., and on the same day Droughn assigned it to Hawkeye-Security Insurance Company, appellant, for a valuable consideration. Execution on the judgment was returned "unsatisfied".

Pursuant to the provisions of Code, § 38.1-380 Hawkeye, assignee, instituted an action against Government Employees seeking a judgment for $2,000 against it. In its answer and grounds of defense, Government Employees denied that the Mattson vehicle was insured by it, and denied that it was liable to Hawkeye in any amount. A trial by jury was waived, and after hearing all the evidence, the court found that Mattson, Sr. had made a material misrepresentation in his application to Government Employees for the insurance policy and on November 3, 1965, rendered judgment in its behalf. We granted Hawkeye a writ of error.

In its assignments of error, Hawkeye asserts that the judgment appealed from was contrary to the law and the evidence and was without evidence to support it. The crucial issue presented in this appeal is whether the insurance policy issued to Mattson, Sr. by Government Employees was in full force and effect on August 18, 1962, the date Droughn was injured, or whether it was void *ab initio* because of an alleged material misrepresentation made by Mattson, Sr. in the procurement of the policy.

The record shows that Mattson, Sr. was insured under an automobile liability policy issued by State Farm Mutual Insurance Company from January 29, 1959, until it was cancelled by the Company on August 5, 1959. Douglas R. Mays, an underwriter for State Farm, testified that the policy was cancelled for "general underwriting reasons" and that Mattson, Sr. was notified of the Company's action by registered mail.

Thereafter, Mattson, Sr. obtained another policy from Home Indemnity Insurance Company which he retained until October 20, 1960 when he was issued the policy here involved by Government

Employees. This policy was twice renewed with coverage extending through October 20, 1963. All premiums were duly paid.

Mattson, Sr. testified that he contacted Government Employees by mail for the insurance and was mailed an application for him to complete and return. Above the space for his signature and the questions to be answered the application read:

"I understand and agree that if the answers to questions 7, 8, 9, or 10, or any of them, are other than 'No', the insurance requested will not be effective until approved by the Company. * * * The Company agrees that * * * if the true answers to questions 7, 8, 9 and 10 are 'No', the insurance applied for will be effective as of: postmarked time and date * * *.

* * * *

"IMPORTANT! ISSUANCE OF A VALID POLICY IS DEPENDENT UPON YOUR TRUE ANSWERS."

We are here concerned only with question No. 7, which follows:

"7. Has any insurance company (including this Company) ever refused, cancelled, refused to renew, or given notice of intention to cancel or refuse, any automobile insurance for you or any member of your household? _____. If 'yes', see above [the above quoted statement] (Give full information on separate sheet)"

The application, which Mattson, Sr. admitted that he himself completed and signed, contained a "No" answer in response to question No. 7. In an attempt to explain this untrue answer, he testified: "At the time that I made this application, I would say in October, if I remember right, I'm not sure, for some reason we had a party around to our house; lots of confusion; I was in the process of making this application and frankly I left it blank for the time being; answered all the other questions and proceeded to sign it. Then, of course, I just said 'no' which haste makes waste."

Gerald T. Jackson, underwriting manager for Government Employees, testified that he had the responsibility of deciding whether a policy should or should not be issued by his Company to an applicant. He said that, if question No. 7 had been answered "yes" without elaboration, the application of Mattson, Sr. would have been rejected; and that, if such an answer had been accompanied by an explanation, the application would have been questioned further and sometimes an independent investigation would be made before deciding whether to issue the policy. Jackson further stated that, where a policy had been cancelled for non-payment of premiums within a

period of ten years or cancelled because of repeated accidents, the Company's risk was affected, and the application for insurance would be rejected.

Jackson, on the other hand, testified that when an application contained a "No" answer to question No. 7, and the rest of the application showed no accidents or violations, the answers would be accepted as true and no investigation would be made.

Hawkeye concedes that the answer "No" to question No. 7 was untrue, but contends Government Employees did not clearly prove that such answer was material to the risk when assumed.

Code, § 38.1-336 is applicable and provides:

"All statements, declarations and descriptions in any application for a policy of insurance * * * shall be deemed representations and not warranties, and no statement in such application * * * shall bar a recovery upon a policy of insurance * * * unless it be clearly proved that such answer or statement was material to the risk when assumed and was untrue."

Whether a representation was made and the terms upon which it was made are factual questions for the jury, but when proved its materiality becomes a question for the court to decide. Materiality of a misrepresentation is an affirmative defense, and the burden is upon the insurer to prove it. *Virginia Mutual* v. *State Farm Mutual*, 204 Va. 783, 788, 133 S. E. 2d 277, 280.

"A fact is material to the risk to be assumed by an insurance company if the fact would reasonably influence the company's decision whether or not to issue a policy. *Appleman, Insurance Law and Practice*, §§ 214, 245 (1965); *Couch, Insurance* 2d § 35:83 (1961); *Vance, Insurance* 376-78 (3d ed. Anderson 1951)." *Mutual of Omaha Ins. Co.* v. *Frank Echols, Et Al., Adm'rs*, 207 Va. 949, 154 S.E. 2d 169, this day decided.

In *Inter-Ocean Ins. Co.* v. *Harkrader*, 193 Va. 96, 100, 101, 67 S.E. 2d 894, 897, we said:

"Representations in an application for a policy of insurance should not only be true but full. The insurer has the right to know the whole truth. If a true disclosure is made, it is put on guard to make its own inquiries, and determine whether or not the risk should be assumed. A misstatement of material facts by the applicant takes away its opportunity to estimate the risk under its contract. A knowledge or ignorance of such facts would naturally and reasonably influence the judgment of the insurer in making the contract or in establishing the

degree of character of the risk or in fixing the rate of premiums." (Citing cases.) See also *Chitwood* v. *Prudential,* 206 Va. 314, 318, 143 S.E. 2d 915, 918.

We have repeatedly held that under Code, § 38.1-336, *supra,* a misrepresentation of a fact material to the risk when assumed renders an insurance contract void. *Virginia Mutual* v. *State Farm Mutual, supra,* 204 Va. at p. 788, 133 S.E. 2d at p. 280; *Scott* v. *State Farm Mutual,* 202 Va. 579, 582, 118 S.E. 2d 519, 522 and cases there cited.

Here, Government Employees carried its burden of clearly proving that the untrue answer to question No. 7 in the application for insurance made by Mattson, Sr. was material to the risk when assumed. The uncontradicted testimony of Jackson, underwriting manager for Government Employees, showed that, if Mattson, Sr. had answered the question "yes" without elaboration, his application would have been rejected; and that, if such answer had been accompanied by an explanation, Mattson, Sr. would have been questioned further and an independent investigation might have been made before deciding to issue the policy. Jackson further testified that when an applicant states that no insurance company has ever refused, cancelled, etc. any automobile insurance for him or any member of his family, and the rest of the application shows no accidents or violations, the "No" answer to question No. 7 would be accepted as true without an investigation, as was the situation in the case of Mattson, Sr.

Government Employees was entitled to know the whole truth. The false answer ("No") to question No. 7 caused the Company to forego an opportunity to investigate why the State Farm policy was cancelled and to determine whether or not the risk should be assumed as well as the premium rate applicable to the risk in the event the policy was issued. *Inter-Ocean Ins. Co.* v. *Harkrader, supra.*

Hawkeye argues that because Government Employees showed only that State Farm cancelled the policy issued to Mattson, Sr. for "general underwriting reasons" and did not show the precise reason therefor, it failed to clearly prove that the misrepresentation was material to the risk assumed by Government Employees. We find this contention to be without substance.

Under the evidence adduced, the trial court properly held that the misrepresentation was material to the risk when assumed and that the policy was null and void *ab initio* for that reason.

Accordingly, the judgment appealed from is

*Affirmed.*